**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGENSEN & COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>GARY SUTHERLAND, NORTH AMERICAN PROFESSIONAL LIABILITY INSURANCE AGENCY, LLC, PLAZA INSURANCE COMPANY, ROCKHILL INSURANCE COMPANY,<br><br>Defendants. | Civil Action No.: 15-7373<br><br>**OPINION** |

**INTRODUCTION**

Before the Court is Plaintiff Jorgensen & Company's ("Plaintiff" or "Jorgensen") Motion for a Preliminary Injunction. [ECF No. 14.] There are two groups of Defendants in this case: (1) Gary Sutherland ("Sutherland") and North American Professional Liability Insurance Agency, LLC ("NAPLIA") (collectively, "the NAPLIA Defendants"); and (2) Plaza Insurance Company and Rockhill Insurance Company (collectively, "the Plaza Defendants"). The NAPLIA Defendants and the Plaza Defendants each filed an opposition to the preliminary injunction motion on November 23, 2015. [ECF Nos. 26 and 27.][1] Plaintiff filed one reply brief on November 30, 2015. [ECF No. 28.] For the following reasons, the Court will deny Plaintiff's Motion for a Preliminary Injunction.

---

[1] Each group of defendants has also filed a motion to dismiss this case (ECF Nos. 13 and 22). Those motions are not the subject of this Opinion and the accompanying order.

1

## BACKGROUND

This litigation arises out of a dispute between competitors in the professional insurance market, specifically insurance products for accountants. [*See generally* Second Amended Verified Complaint.[2]] Since its formation in 1998, Plaintiff Jorgensen has been the exclusive and sole manager of a risk purchasing group insurance program called Professional Adviser's Purchasing Group, Inc. with the brand name "CPAGold™." [SAVC ¶ 11.] The program is licensed for sale in all states except Alaska and Jorgensen is the appointed agent and program manager in all state filings. [*Id.*]

Plaintiff Jorgensen had a longstanding business relationship with the NAPLIA Defendants, who served as a "partner-producer" of Jorgensen. [*See id.* ¶ 18.] As a partner-producer, the NAPLIA Defendants developed relationships and solicited customers for Jorgensen's insurance products, including the product at issue called "CPAGold™." [*See generally id.*]

The business relationship between Jorgensen and the NAPLIA Defendants began to sour in or around 2013. [*See id.* ¶¶ 21-24.] The relationship has now ended. The NAPLIA Defendants, allegedly in conjunction with the Plaza Defendants, have launched a competing insurance product called "CPA ProSecure." [*Id.* ¶¶ 26-39.]

Based on the launch of the competing CPA ProSecure product, and Defendants' activities in connection with that product, Plaintiff brought this lawsuit. The Verified Complaint alleges causes of action for copyright infringement, trade secret misappropriation, tortious interference,

---

[2] Plaintiff's original Verified Complaint was filed on October 8, 2015 [ECF No. 1], the First Amended Verified Complaint was filed the next day on October 9, 2015 [ECF No. 2], and the Second Amended Verified Complaint was filed the next day on October 10, 2015 [ECF No. 6]. The Court treats the Second Amended Verified Complaint as the relevant pleading and refers to it as the "SAVC."

and false advertising. [*Id.* ¶¶ 40-73.]

As an initial matter, the Court notes that an emergency motion for a preliminary injunction and temporary restraining order was filed with the Verified Complaint in this action. [ECF No. 4.] Subsequently, the parties agreed to a Consent Order granting temporary restraints with respect to Defendants' use of Plaintiff's Excel rating worksheets used to underwrite CPAGold™ accounts. [ECF No. 10.] The instant motion pertains to activities not included within the consented restraints.

Specifically, the instant motion seeks to have Defendants preliminarily enjoined from using four categories of information: (1) Jorgensen's copyrighted CPAGold™ rate and rule plan; (2) Jorgensen's CPAGold™ customer lists; (3) information about expiration dates for CPAGold™ policies; and (4) information about CPAGold™ customers' loss histories.[3] With respect to Category 1, Defendants' position is that the rate and rule plan is not copyrightable and, to the extent it is copyrightable, Jorgensen is not the owner of the copyright. As for Categories 2-4, Defendants contend that they do not have, and are not using Jorgensen's confidential information.

On January 13, 2016, the Court held a teleconference with the parties. During that teleconference, it was agreed that Plaintiff would identify five CPAGold™ customers for whom the NAPLIA Defendants had allegedly used the first three categories of information. The NAPLIA Defendants agreed to submit an affidavit with respect to the five identified customers, certifying that Jorgensen's information had not been used in connection with soliciting or providing insurance for those customers. On January 20, 2016, Defendants submitted an Affidavit of Gary Sutherland, attesting to the circumstances under which each of the five identified customers were

---

[3] For simplicity, the Court will refer to these categories of information as "Category 1," "Category 2," Category 3," and "Category 4."

solicited. [ECF No. 34-1.] Plaintiff submitted a response to Sutherland's affidavit on January 22, 2016 [ECF No. 35] and a supplemental declaration from Rickard Jorgensen, President of Jorgensen, on January 25, 2016 [ECF No. 37]. Sutherland then filed an additional affidavit on January 29, 2016. [ECF No. 38.] On February 1, 2016, Plaintiff submitted an additional response to the Sutherland affidavits. [ECF No. 39.]

## LEGAL STANDARDS

A preliminary injunction "is 'an extraordinary remedy' and 'should be granted only in limited circumstances.'" *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal citation omitted). "The grant or denial of a preliminary injunction is committed to the sound discretion of the district judge . . . ." *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982).

In determining whether a preliminary injunction should be issued, it is well settled that this Court must consider four factors: (1) likelihood of success on the merits; (2) irreparable harm; (3) a balance of the hardships; and (4) the public interest. *See, e.g., Pappan Enters. v. Hardee's Food Sys.*, 143 F.3d 800, 803 (3d Cir. 1998). The Third Circuit has stated that the extraordinary relief should only be granted if the movant makes a showing on all four factors, and that a failure to establish any element renders a preliminary injunction inappropriate. *ACE Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 730-31, (3d Cir. 2009) (citing *Nutrasweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

## DISCUSSION

### 1. Likelihood of Success on the Merits

The Court recognizes that Plaintiff need only show a "likelihood" that it will succeed at trial and need not prove its case at this stage of the proceedings. But the Court must balance that directive against the well-established principle that a preliminary injunction is extraordinary relief

4

and should only be granted in limited circumstances. In this case, the Court finds that Plaintiff has not met its burden of showing a likelihood of success on the merits. Accordingly, the Motion for a Preliminary Injunction will be denied.

    a. Category 1

With respect to Category 1, Plaintiff's copyrighted rate and rule plan for its CPAGold™ product, there are factual and legal disputes as to whether Plaintiff is the holder of a valid copyright over the information. As a factual matter, Defendants argue that "[t]he claimed author [of the rate and rule plan], Rickard Jorgensen, is not in fact the owner of the purportedly copyrighted material because he did not develop it. Instead, that material was obtained from Rickard Jorgensen's prior employer, the Herbert H. Landy Isurance Agency, Inc. ("Landy")." [ECF No. 26 at 5.] Defendants also contend that the copyright is invalid because the material was in the public domain. [*Id.*] To illustrate these points, the NAPLIA Defendants provided a 1996 Landy rate sheet and the Plaza Defendants provided a 2000 rate filing submitted to the California Department of Insurance, both for comparison with the Jorgensen rate sheet (much like Plaintiff provided its own rate sheet for comparison with NAPLIA's.) [*Compare* ECF No. 26-1, Ex. A, *and* ECF No. 27-1, Ex. 1, *with* ECF No. 6, Ex. I, *and* ECF No. 6, Ex. J.] In light of the substantial similarities among all the rate sheets that have been provided, on this preliminary record the Court concludes that to the extent Plaintiff can show a likelihood that Defendants' rate sheet infringes its copyright, Defendants have an equal likelihood of showing Plaintiff was not entitled to the copyright in the first place.

As a matter of law, Defendants also argue that Plaintiff is claiming copyright protection for the "underlying concepts, procedures, methods, and the like" contained within the rate sheet. To the extent Plaintiff is attempting to preclude Defendants' use of that information, such information is not subject to copyright protection. *See Pazienza v. St. Barnabas Med. Ctr.*, 921 F.

Supp. 1274, 1276, n.2 (D.N.J. 1995) ("[T]he Copyright Act simply does not prohibit the use of ideas contained in copyrightable material."); 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."). As the nature of the rate sheets is to calculate rates for an insurance business, there is a substantial likelihood that Defendants will be able to show that Plaintiff cannot claim copyright protection over the methods of calculating rates, or any concepts and principles embodied in those methods.

b. Categories 2-4

With respect to Categories 2-4, Plaintiff has identified a specific list of five companies that it alleges are its own customers that have been solicited by NAPLIA using Jorgensen's confidential information. [See ECF No. 34 at 1.] In response, the NAPLIA Defendants submitted an affidavit of Gary Sutherland detailing the relationship between NAPLIA and each of the five firms. [Id.] Plaintiff and the NAPLIA Defendants subsequently made additional submissions pertaining to this matter. These submissions illustrate that there are significant disputed factual issues with respect to whether Defendants are improperly using Jorgensen's confidential information to solicit and service Jorgensen's customers.

Essentially, the NAPLIA Defendants argue that the customers at issue are not Jorgensen's customers and alternatively, to the extent they are Jorgensen's customers, NAPLIA has not used any of Jorgensen's confidential information to solicit them. Supported by the affidavit of Mr. Sutherland, the NAPLIA Defendants contend that "NAPLIA was introduced to all five firms independently from Jorgensen, and developed its own relationship with the firms without the involvement of Jorgensen." [ECF No. 34 at 1-2.] The NAPLIA Defendants further assert that

these customers belong to NAPLIA, and that it is Jorgensen who has "used NAPLIA client information to lure customers away from NAPLIA." [ECF No. 34 at 2.]

In response to Mr. Sutherland's assertions, Plaintiff submitted the affidavit of Rickard Jorgensen, in which Mr. Jorgensen infers that NAPLIA had information about the customers it could only have gotten by accessing Jorgensen's confidential information. [*See* ECF No. 35-1 ¶ 5 ("... NAPLIA *would only do that if* .... It is *my strong belief* that NAPLIA is using ...."), ¶ 6 ("*If* NAPLIA had ..., *it would* .... Accordingly, NAPLIA [] *would not have* ...."). The NAPLIA Defendants, however, have explained that they do have an alternative source to acquire such information—the customer itself. [ECF No. 38.]

In light of the long relationship between these parties working together to solicit customers, the Court recognizes that the question of who a customer "belongs to" may not be immediately clear. However, on Plaintiff's preliminary injunction motion, it is Plaintiff who bears the burden of demonstrating it is likely to succeed on the merits, not Defendants. Plaintiff must demonstrate that Defendants have used Plaintiff's confidential information to solicit its customers. Plaintiff has not met that burden.

### 2. Other Preliminary Injunction Factors

Plaintiff's failure to show likelihood of success on the merits is fatal to its preliminary injunction motion. Accordingly, the Court need not consider the other preliminary injunction factors. *See ACE Am. Ins.*, 306 F. App'x at 730-31. However, the Court further notes that Plaintiff has failed to meet its heavy burden of showing that it will suffer immediate irreparable harm that cannot be remedied by money damages. *See Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997) ("An injunction is appropriate only where there exists a threat of irreparable harm such that legal remedies are rendered inadequate."). In fact, Plaintiff's submissions to the Court demonstrate that

it has calculated a dollar amount of its alleged losses to date. [*See* ECF No. 45.] Furthermore, the balance of hardships does not weigh in Plaintiff's favor and it is not in the public interest to inhibit Defendants' ability to compete in the insurance marketplace.

## CONCLUSION

Having reviewed the parties' submissions, and in light of the teleconference held with the parties, the Court finds that Plaintiff has failed to meet its burden on a motion for a preliminary injunction. An appropriate order accompanies this Opinion.

Dated: June 30, 2016

_____
CLAIRE C. CECCHI, U.S.D.J.