**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGENSEN & COMPANY,<br><br>             Plaintiff,<br><br>v.<br><br>GARY SUTHERLAND, NORTH AMERICAN PROFESSIONAL LIABILITY INSURANCE AGENCY, LLC, PLAZA INSURANCE COMPANY, ROCKHILL INSURANCE COMPANY,<br><br>             Defendants. | Civil Action No.: 15-7373<br><br>**OPINION** |

## INTRODUCTION

This matter comes before the Court on the Second Amended Verified Complaint[1] filed by Jorgensen & Company ("Plaintiff" or "Jorgensen"). [ECF No. 6.] Pending before the Court are two motions to dismiss. The first Motion to Dismiss was filed by Defendants Plaza Insurance Company and Rockhill Insurance Company (collectively, "the Plaza Defendants"). [ECF No. 13.] The second Motion to Dismiss was filed by Defendants Gary Sutherland ("Sutherland") and North American Professional Liability Insurance Agency, LLC ("NAPLIA") (collectively, "the NAPLIA Defendants"). [ECF No. 22.] Plaintiff opposes both motions. [ECF Nos. 24 and 25.] In the interest of efficiency, the Court addresses both motions together. For the following reasons, the

---

[1] Plaintiff's original Verified Complaint was filed on October 8, 2015 [ECF No. 1], the First Amended Verified Complaint was filed the next day on October 9, 2015 [ECF No. 2], and the Second Amended Verified Complaint was filed the next day on October 10, 2015 [ECF No. 6]. The Court treats the Second Amended Verified Complaint as the relevant pleading and refers to it as the "SAVC."

1

Court will grant in part and deny in part the Plaza Defendants' Motion to Dismiss. The Court will deny the NAPLIA Defendants' Motion to Dismiss.

## BACKGROUND

This litigation arises out of a dispute between competitors in the professional insurance market, specifically insurance products for accountants. [*See generally* SAVC.] Since its formation in 1998, Plaintiff Jorgensen has been the exclusive and sole manager of a risk purchasing group insurance program called Professional Adviser's Purchasing Group, Inc. with the brand name "CPAGold™." [*Id.* ¶ 11.] The program is licensed for sale in all states except Alaska and Jorgensen is the appointed agent and program manager in all state filings. [*Id.*]

Plaintiff had a longstanding business relationship with the NAPLIA Defendants, who served as a "partner-producer" of Jorgensen. [*See id.* ¶ 18.] Essentially, the NAPLIA Defendants developed relationships and solicited customers for Jorgensen's insurance products, including the CPAGold™ product at issue. [*See generally id.*]

The business relationship between Plaintiff and the NAPLIA Defendants allegedly began to sour in or around 2013. [*See id.* ¶¶ 21-24.] The relationship has now ended. The NAPLIA Defendants, allegedly in conjunction with the Plaza Defendants, have launched a competing insurance product called "CPA ProSecure." [*Id.* ¶¶ 26-39.]

Based on the launch of the competing CPA ProSecure product, and Defendants' alleged activities in connection with that product, Plaintiff brought this lawsuit. The SAVC alleges causes of action for copyright infringement, trade secret misappropriation (under the New Jersey Trade Secrets Act ("NJTSA")), tortious interference, and false advertising (under the Lanham Act). [*Id.* ¶¶ 40-73.]

With respect to the copyright infringement claim, Plaintiff alleges that it is the "owner of all rights under [the] copyright for "CPA Gold Accountants' Profession Liability Insurance

Program," Registration Number TX 5-759-463 in the United States Copyright Office (the "Protected Work"). [*Id.* ¶ 41.] Plaintiff further alleges that "Defendants have advertised, offered for sale and sold insurance policies based on an insurance program similar to the Protected Work and in violation of Jorgensen's exclusive rights." [*Id.* ¶ 42.] As an example, Plaintiff attaches as Exhibit J to the SAVC Defendants' rate sheet, which Plaintiff alleges is substantially similar to the Protected Work. [*Id.*]

With respect to Plaintiff's NJTSA claim, the SAVC alleges that all Defendants have engaged in improper activities with respect to Plaintiff's proprietary information, including premium calculation rate sheets, relationships, program details, results and negotiations concerning coverage enhancements, reinsurance, bulk loss run information, and details of a confidential panel counsel list. [*Id.* ¶¶ 33-39.] Plaintiff further alleges that Defendants have utilized proprietary information about Plaintiff's customers, including customer lists, expiration dates for policies, and loss histories. [*Id.* ¶ 38.]

With respect to Plaintiff's tortious interference claim, Plaintiff alleges that the NAPLIA Defendants have made false and misleading disparaging statements to Jorgensen's customers and partner-producers about Plaintiff's product. [*Id.* ¶¶ 38, 52.] Plaintiff also alleges that "NAPLIA is improperly trying to solicit other agents of Jorgensen by misrepresenting its ownership of Jorgensen's intellectual property and interfering with the relationship between Jorgensen and these partner-producers." [*Id.* ¶ 50.]

Finally, with respect to Plaintiff's false advertising claims, Plaintiff alleges that NAPLIA has engaged in misleading advertising tactics to generate business for its product. The SAVC sets forth specific examples of statements it alleges were misleading. [*Id.* ¶¶ 62-73.]

## LEGAL STANDARDS

For a complaint to avoid dismissal pursuant to Rule 12(b)(6), it "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating the sufficiency of a complaint, Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Furthermore, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). Accordingly, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

**DISCUSSION**

### 1. Plaintiff's Claims Against Rockhill

The SAVC alleges that Rockhill is the parent company of Plaza. [SAVC ¶¶ 5-6.] It contains no other factual allegations regarding Rockhill. Plaintiff appears to argue that Rockhill should be liable because it "has the ability to supervise" Plaza. [ECF No. 25.] The Court, however, finds that holding Rockhill accountable for the liability of a separate entity would be contrary to principles of equity.

In analyzing a pleading, the Court begins with "the fundamental propositions that a corporation is a separate entity from its shareholders, . . . and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *Ohai v. Verizon Communs., Inc.*, No. 05-729, 2005 U.S. Dist. LEXIS 25703, at *23, (D.N.J. Oct. 24, 2005) (quoting *State Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 500-01 (1983)). As the Third Circuit has stated:

> A court may not depart from this principle and pierce the corporate veil unless it finds that a subsidiary was a mere instrumentality of the parent corporation. The requisite finding is that the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent.

*Marzano v. Computer Science Corp.*, 91 F.3d 497, 513 (3d Cir. 1996) (internal quotations omitted). "The requirements for corporate veil piercing . . . although rather imprecise in their various formulations, are demanding ones." *Bootay v. KBR, Inc.*, 437 F. App'x 140, 143 (3d Cir. 2011) (internal quotations omitted). To assert a cause of action for the equitable remedy of piercing the corporate veil, the pleading must allege two elements. "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Holzli v. Deluca Enters.*, No. 11-6148, 2012 U.S. Dist. LEXIS 38880, at *4 (D.N.J. Mar. 21, 2012) (internal citation omitted).

Here, Plaintiff has not pleaded any facts regarding Rockhill's relationship with Plaza. Accordingly, the Court does not find that Plaintiff has met its burden of pleading that the corporate veil should be pierced to hold Rockhill accountable for Plaza's actions. Accordingly, in order to respect the separate corporate existence, Rockhill will be dismissed from this action.

### 2. Plaintiff's Copyright Claim Against All Remaining Defendants

To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original" by the defendant. *Kepner-Tregnoe Inc. v. Executive Development, Inc.*, 79 F. Supp. 2d 474, 484 (D.N.J. 1999) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). In the SAVC, Plaintiff identifies the registration number of the copyright for the Protected Work, [SAVC ¶ 41], attaches the Certificate of Registration for the copyright [SAVC Ex. H], asserts that it is the owner of all rights under the copyright [*id*], and attaches a rate sheet found in the Protected

5

Work [*see* SAVC Ex. I]. The SAVC accuses Defendants of infringing the copyright and attaches the allegedly infringing rate sheet used in Defendants' CPA ProSecure product for comparison with the rate sheet found in the Protected Work. [*Compare* SAVC Ex. J, *with* SAVC Ex. I.] The Court finds that Plaintiff has sufficiently pleaded a cause of action for copyright infringement.

Defendants' challenges to Plaintiff's copyright claim are based on factual disputes about whether the Protected Work constitutes copyrightable subject matter, whether Plaintiff is the actual owner of the copyright for the Protected Work, and whether the Protected Work was in the public domain. [ECF No. 22-2 at 5-6.] These challenges, however, present questions of fact that the Court cannot evaluate at this stage of the case. Additionally, the Plaza Defendants contend that the SAVC does not allege any infringement by Plaza. However, the first page of the allegedly infringing rate sheet contains the heading "PLAZA INSURANCE COMPANY." [SAVC Ex. J at 1.] Accordingly, as to Count I of the SAVC, both motions to dismiss will be denied.

### 3. Plaintiff's NJTSA Claim Against All Remaining Defendants

The NJTSA defines "misappropriation" as:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:
>
>> (a) used improper means to acquire knowledge of the trade secret; or
>>
>> (b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or
>>
>> (c) before a material chance of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

N.J. Stat. Ann. § 56:15-2. Under the NJTSA, "improper means" includes "breach or inducement

of a breach of an express or implied duty to maintain the secrecy of, or to limit the use or disclosure of, a trade secret." *Id.* The NJTSA defines a "trade secret" as:

> Information, held by one or more people, . . . that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its deisclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.*

### a. The NAPLIA Defendants' motion to dismiss the NJTSA claim is denied.

The NAPLIA Defendants appear to raise two challenges to Plaintiff's NJTSA claim. First, the NAPLIA Defendants dispute the existence of a contract obligating them to maintain the confidentiality of Plaintiff's proprietary information. [ECF No. 22-2 at 9.] However, at this point in the proceedings, it is sufficient that Plaintiff alleges that "there was a contract in place that mandated the confidentiality" of Plaintiff's information. [SAVC ¶¶ 31-32, 46.] Moreover, the SAVC describes the history and relationship between Plaintiff and the NAPLIA Defendants. [SAVC ¶¶ 9-25.] Construing the facts and making reasonable inferences in a light most favorable to Plaintiff, the pleaded facts demonstrate that the NAPLIA Defendants had at least an implied duty to maintain the secrecy and confidentiality of Plaintiff's trade secrets.

Second, the NAPLIA Defendants dispute whether certain categories of information identified in the SAVC actually constitute trade secrets and whether they belong to Plaintiff. [ECF No. 22-2 at 9-10.] At this stage of the case, however, the Court is not in a position to evaluate the factual disputes raised by the NAPLIA Defendants. Plaintiff has sufficiently alleged categories of information that it holds as trade secrets with respect to its products, its customers, and its relationships. The NAPLIA Defendants' challenges are more appropriate for a summary judgment

motion or trial.

### b. The Plaza Defendants' motion to dismiss the NJTSA claim is granted.

The Plaza Defendants challenge the NJTSA claim based on the failure of the SAVC "to include any cogent allegations of misappropriation by Rockhill or Plaza." [ECF No. 13-1 at 8.] As the Plaza Defendants point out, the SAVC contains allegations about information that NAPLIA acquired and used. However, even making reasonable inferences in Plaintiff's favor, the SAVC provides no basis to conclude that Plaza "kn[ew] or ha[d] reason to know" that any trade secrets were acquired by improper means. *See* N.J. Stat. Ann. § 56:15-2. Plaintiff's conclusory recitation "upon information and belief" that certain information was provided to Plaza is insufficient to satisfy the pleading standard under *Twombly* and *Iqbal*. *See Montero v. Brickman Grp., Ltd.*, No. 12-2535, 2012 U.S. Dist. LEXIS 121679, at *3 (D.N.J. Aug. 28, 2012) ("[A]llegations offered on the basis of 'information and belief' will not suffice if they merely and formulaically recite the elements of a cause of action."); *see also McQueen v. BMW of N. Am., LLC.*, No. 12-6674, 2014 U.S. Dist. LEXIS 21084, at *12-13 (D.N.J. Feb. 20, 2014). Thus Plaintiff's NJTSA claim against the Plaza Defendants will be dismissed.

### 4. Plaintiff's Tortious Interference Claim Against the NAPLIA Defendants

The law protects a person's interest in a contract already made and in the reasonable expectations of economic advantage. *Harris v. Perl,* 41 N.J. 455, 462 (1964). To prove a claim for tortious interference with contractual relations and prospective economic relations, a plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of the defendant's malicious interference, and that it suffered losses thereby. *Baldasarre v. Butler*, 132 N.J. 278, 293 (1993). The relevant inquiry is whether the conduct crosses the line from competition to tortious injury. *See Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 199 (App. Div. 1995).

Here, Plaintiff alleges numerous acts of improper solicitation taken by the NAPLIA Defendants with respect to Plaintiff's customers. The NAPLIA Defendants argue that the customers at issue "have been and continue to be those of NAPLIA, not Jorgensen." [ECF No. 22-2 at 12.] However, NAPLIA does not contest that it was a partner-producer of Jorgensen's for nearly 20 years and that it developed relationships and solicited customers for Jorgensen's insurance products. Thus, in the context of this business relationship, the distinction between customers of NAPLIA and customers of Jorgensen is not clear to the Court. At the very least, this issue presents a factual dispute that cannot be resolved at this point in the proceedings. Furthermore, the NAPLIA Defendants fail to address the numerous allegations contained in the SAVC regarding misleading statements and misrepresentations made in solicitation of customers and partner-producers. Accordingly, Plaintiff has sufficiently pleaded a cause of action for tortious interference and the NAPLIA Defendants' motion to dismiss will be denied as to that claim.

### 5. Plaintiff's Lanham Act Claim Against the NAPLIA Defendants

"[T]o prevail on a claim of unfair advertising under Section 43(a), a plaintiff must first prove by a preponderance of the evidence that the claims it challenges are false or deceptive." *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 227, (3d Cir. 1990) (internal quotation omitted). Here, Plaintiff alleges numerous false statements that have been made by NAPLIA in advertising its CPA ProSecure Product. [SAVC ¶¶ 61-72.] The NAPLIA Defendants move to dismiss on the basis that Plaintiff has not proven that these statements are false. [ECF No. 22-2 at 14-15.] In doing so, the NAPLIA Defendants ask this Court to make the factual determination that its advertising statements were true. [*Id.*] However, in evaluating a motion to dismiss, this Court must accept as true all well-pleaded facts and is not in position to evaluate the truth of the statements at issue. Accordingly, Plaintiff has sufficiently pleaded a cause of action for false advertising under the Lanham Act.

## CONCLUSION

Having reviewed the parties' submissions, the Court finds as follows:

1. The Plaza Defendants' Motion to Dismiss is granted in part as to Defendant Rockhill and Rockhill will be dismissed from this action.

2. The Plaza Defendants' Motion to Dismiss is granted in part as it pertains to Plaintiff's claim against Plaza under the NJTSA in Count II. Count II will be dismissed as to Plaza.

3. The Plaza Defendants' Motion to Dismiss is denied in part as it pertains to Plaintiff's claim against Plaza for copyright infringement in Count I. Count I asserting copyright infringement will not be dismissed against Plaza.

4. The NAPLIA Defendants' Motion to Dismiss is denied.

An appropriate order accompanies this Opinion.

**CLAIRE C. CECCHI, U.S.D.J.**

Dated:
6/30/16