NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGENSEN & COMPANY, | Civil Action No.: 15-7373 |
| Plaintiff, | |
| v. | OPINION |
| GARY SUTHERLAND *et al.*, | |
| Defendants. | |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

This matter comes before the Court on the Third Amended Complaint (styled "Amended Complaint" but hereinafter "TAC") filed by Jorgensen & Company ("Plaintiff" or "Jorgensen"). [ECF No. 81.] Pending before the Court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Gary Sutherland ("Sutherland"), Stephen Vono ("Vono"), and Dogan Tuncel ("Tuncel", together "the Individual Defendants"). [ECF No. 76.] Defendant North American Professional Liability Insurance Agency, LLC ("NAPLIA" or "the LLC") is not a party to the motion. Plaintiff opposed the motion, [ECF No. 77], and moved to have counsel for the Individual Defendants sanctioned under Fed. R. Civ. P. 11(c) for filing the motion to dismiss. [ECF No. 86.] The motions are decided without oral argument pursuant to Fed. R. Civ. P. 78(b).[1] For the following reasons, the motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1332.

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991).

1

## II. BACKGROUND

### A. Factual Allegations

This litigation arises out of a dispute between competitors in the professional insurance market, specifically insurance products for accountants. [*See generally* TAC.] Plaintiff has been the exclusive and sole manager of a risk purchasing group insurance program called Professional Adviser's Purchasing Group, Inc. with the brand name "CPAGold™" since the program's formation in 1998. [*Id.* ¶ 12.] The program is licensed for sale in all states except Alaska, and Plaintiff is the appointed agent and program manager in all state filings. [*Id.*] Plaintiff registered the CPAGold™ program with the United States Copyright Office on May 15, 2003. [*Id.* ¶ 42.]

In March 1999, Plaintiff and Sutherland entered into an agreement making Sutherland an "independent contractor producer" for Plaintiff. [TAC ¶ 10.] Sutherland agreed to "assume the role of the local office of [Plaintiff] in [Massachusetts]" and produce clients for the CPAGold™ program in exchange for a higher commission rate than was given to other producers. [*Id.* ¶ 11-12.] Vono became another independent contractor producer for Plaintiff in May 1999. [*Id.* ¶ 15.] In July 1999, Sutherland and Vono formed a partnership called North American Professional Liability Insurance Agency ("NAPLIA Partnership," not a party to this case), which primarily produced clients for Plaintiff's CPAGold™ program.2 [*Id.*] In February 2003, the NAPLIA Partnership entered into an agreement with Plaintiff's sister company prohibiting the NAPLIA Partnership from disclosing Plaintiff's non-public information concerning the CPAGold™ program. [*Id.* ¶ 31.] On May 20, 2004, Defendant NAPLIA was formed under Delaware law, with Sutherland and Vono as initial members. [*Id.* ¶ 18.] NAPLIA's Massachusetts registration

---

2 Plaintiff formed Jorgensen & Co. Professional Liability Insurance Brokerage Inc., a Massachusetts-based corporation, for the NAPLIA Partnership to use as "a licensed umbrella agency." [TAC ¶ 16.] Sutherland was and is a director of this company. [*Id.*]

2

statement states that "[t]he general character of the business of the LLC is to act exclusively as an insurance producer." [*Id.*] Tuncel "joined NAPLIA as an insurance producer" in 2004. [*Id.* ¶ 17.] According to Plaintiff, the LLC indicated as late as August 11, 2015, that it, too, considered itself bound by the terms of the 2003 confidentiality agreement. [*Id.* ¶ 32.] Plaintiff worked closely with the NAPLIA Partnership and then with NAPLIA, which included sharing confidential proprietary information and data about Plaintiff's insurance products and clients, and giving NAPLIA authority to "pre-underwrite CPAGold™ accounts." [TAC ¶¶ 19-21.]

Plaintiff's business relationship with NAPLIA began to deteriorate in 2013. [TAC ¶¶ 22-25.] On July 24, 2015, Sutherland sent Plaintiff an e-mail "formally terminating the relationship." [*Id.* ¶ 29.] The e-mail stated that NAPLIA would no longer send Plaintiff CPAGold™ renewal submissions, and was planning to tell its current CPAGold™ customers that NAPLIA would be offering a new insurance program instead of CPAGold™. [*Id.*] Plaintiff responded on July 29, 2015, telling Sutherland to "delete any copies of our proprietary rate worksheets that relate to our products and any reference to our programs from your website and other materials[.]" [*Id.* ¶ 30.]

On August 3, 2015, Plaintiff alleges "the Individual Defendants and NAPLIA [began to] use the name 'ProSecure' for a newly launched accountant insurance program – a program built on the trade secrets and copyrights belonging to Jorgensen." [TAC ¶ 28.] Plaintiff contends "NAPLIA and the Individual Defendants pretended to be trusted and intimate business associates of [Plaintiff], while in truth they were collecting data and confidential information[,]" including Plaintiff's premium calculation rate sheets, client contacts, underwriters, and other details about the CPAGold™ program, which they used to develop a product in direct competition with CPAGold™. [*Id.* ¶ 34.] Plaintiff claims they collected this information under the guise of developing a program that would complement, rather than compete with, CPAGold™, and used

the information to further the ProSecure program, including convincing NAPLIA's new partner insurer, Plaza Insurance Company ("Plaza"),3 to underwrite the program. [*Id.* ¶¶ 36-39.] In particular, Sutherland allegedly sent Plaintiff an email in "early 2015" regarding a "non-standard" insurance program "to elicit additional confidential information" from Plaintiff without disclosing that NAPLIA was developing a competitor program. [*Id.* ¶ 36.] Additionally, Tuncel and Sutherland twice requested "details of CPAGold™ confidential panel counsel list" from claims staff, and provided this information to Plaza. [*Id.* ¶ 38.]

Plaintiff also claims NAPLIA and the Individual Defendants improperly solicited existing CPAGold™ clients, by means including the use of confidential materials. Beginning in August 2015, John Raspante—a NAPLIA employee who is not a party here—allegedly sent disparaging letters about Plaintiff to CPAGold™ members just before these members were due to renew their insurance, which Plaintiff claims would only be possible if NAPLIA were using confidential information about the clients to know when they would be due to renew. [*Id.* ¶ 39.] On September 2, 2015, Sutherland allegedly sent an e-mail to one of Plaintiff's other producers seeking to discuss the CPAGold™ program even though NAPLIA was no longer a producer for Plaintiff. [*Id.* ¶ 51.] Tuncel allegedly told Plaintiff "I have been 'enticing' many clients to NAPLIA over the last couple months and we are going full force with a pipeline full of new business to go after as well in the coming months. We plan on being very successful with getting those clients to work with us as well." [*Id.*] Plaintiff alleges NAPLIA held a conference of Plaintiff's insurance agents on October 16, 2015, "to directly solicit and otherwise interfere with [Plaintiff's] business relationships with its partner-producers." [*Id.* ¶ 55.]

---

3 Plaza was a Defendant in this case until Plaintiff filed a Notice of Dismissal on February 25, 2017. [ECF No. 113.]

Plaintiff claims the Individual Defendants have knowingly and willfully committed copyright infringement because they "personally participated in the infringing activities and used NAPLIA to carry out this deliberate infringement." [TAC ¶ 44.] Plaintiff also claims the Individual Defendants have violated the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 ("NJTSA"), in that "Defendant Sutherland and NAPLIA – in order to prepare, launch, and underwrite under the CPA ProSecure program, used [information covered under a confidentiality agreement] improperly." [*Id.* ¶ 48.] Finally, Plaintiff claims the Individual Defendants have tortiously interfered with its contractual relations and prospective economic relations by soliciting Plaintiff's clients and producers. [*Id.* ¶¶ 50-60.]

## B. Procedural History

Plaintiff's original Verified Complaint was filed on October 8, 2015 [ECF No. 1], the First Amended Verified Complaint was filed the next day on October 9, 2015 [ECF No. 2], and the Second Amended Verified Complaint ("SAVC") was filed the next day on October 10, 2015 [ECF No. 6]. Sutherland was a named Defendant in the SAVC; Tuncel and Vono were not. On November 12, 2015, Sutherland (along with NAPLIA) moved to dismiss the SVAC for failure to state a claim for copyright infringement, violation of the NJTSA, and/or tortious interference with economic relations, the same three claims at issue on the present motion. [ECF No. 22.] On June 30, 2016, the Court denied Sutherland's motion, finding that, as to Sutherland and NAPLIA, all three causes of action stated a claim upon which relief could be granted. [ECF No. 53.]

After the motion to dismiss the SAVC was decided, Plaintiff moved to file a third amended complaint to add Defendants Tuncel and Vono and to reflect the Court's dismissal of certain claims and Defendants not relevant here. [ECF No. 61.] No opposition was filed to the motion. The Individual Defendants represent that, during a conference on July 27, 2016, Magistrate Judge Falk

"indicat[ed] . . . that the preferable procedure was not to file an opposition to Jorgensen's Motion For Leave to Amend, but to instead file a Motion to Dismiss the Third Amended Complaint." [ECF No. 83 at 2 ("Reply Br.").] Plaintiff represents that Judge Falk "mentioned that he would likely grant the pending Motion to Amend but that Defendants were free to file any motion they wanted – including a motion to dismiss," but characterizes Judge Falk's statement as "casual" and contends that it "was obviously not any sort of green light to actually file such a motion" because "the Court is not on the bench to provide legal counsel to litigants." [ECF No. 77 at 5 ("Opp. Br.").] Judge Falk granted the motion to amend. [ECF No. 71.]

Plaintiff filed the TAC [ECF No. 81] on August 10, 2016. The TAC adds Tuncel and Vono as Defendants and a few additional factual allegations, [*compare, e.g.*, SAVC ¶ 50 *with* TAC ¶ 51], but does not significantly alter the substance of the allegations in the SAVC, either generally or as to Sutherland in particular.

On August 26, 2016, without filing an answer, the Individual Defendants collectively moved to dismiss the TAC on the grounds that "[e]ach count of the [TAC] lacks any allegation that the Individual Defendants acted in their individual capacities in a manner that would justify imposition of liability against them." [ECF No. 76-2 at 1 ("Moving Br.").] The Individual Defendants contend that, under Delaware LLC law, they cannot be held liable for actions done in their capacity as members or managers of NAPLIA. [*Id.* at 3 (citing 6 Del. C. § 18-303(a)).] Sutherland did not raise this argument in his previous motion to dismiss.

### III. LEGAL STANDARD

For a complaint to avoid dismissal pursuant to Rule 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating the sufficiency of a complaint, Courts are required to accept all well-pleaded

allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Furthermore, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and quotations omitted). Accordingly, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## IV. DISCUSSION

### A. Effect of 6 Del. C. § 18-303(a) on Liability[4]

6 Del. C. § 18-303(a) reads in relevant part:

> Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.

The Individual Defendants contend this statute shields them from all liability in this case because "all of the allegations of the [TAC] concern allegedly wrongful conduct taken exclusively in

---

[4] Plaintiff contends this motion is barred for all three Individual Defendants, both because Sutherland filed a previous Rule 12(b)(6) motion that was denied, [Opp. Br. at 3-5], and because all three Individual Defendants failed to oppose Plaintiff's motion to amend [*id.* at 5]. The Court finds Defendants' failure to oppose the motion to amend does not bar this motion because Judge Falk assured Defendants they would be allowed to move to dismiss after the motion to amend was granted. [Opp. Br. at 5; *accord* Reply Br. at 2.] Moreover, Vono and Tuncel were not parties in this case until after the motion to amend was granted. As for the effect of Sutherland's previous Rule 12 motion to dismiss the SAVC, the Court need not decide whether it prevents him from moving to dismiss the TAC because, for reasons explained below, the Court finds the TAC states a claim as to Sutherland, and denies the motion on the merits.

7

furtherance of NAPLIA's corporate purposes[.]" [Moving Br. at 3.] The Court disagrees.

Delaware courts have noted that the word "solely" in the last clause of 6 Del. C. § 18-303(a) "does imply that there are situations where LLC members and managers would not be shielded by this provision." *Pepsi-Cola Bottling Co. of Salisbury, Md. v. Handy*, No. 1973-S, 2000 WL 364199, at *3 (Del. Ch. Mar. 15, 2000). Indeed, under Delaware law, "corporate officials may be held individually liable for their tortious conduct, even if undertaken while acting in their official capacity." *Duffield Assocs., Inc. v. Meridian Architects & Eng'rs, LLC*, No. S10C-03-004 RFS, 2010 WL 2802409, at *4 (Del. Ch. July 12, 2010) (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978); *accord Gassis v. Corkery*, No. 8868-VSG, 2014 WL 3565418, at *5 n.24 (Del. Ch. July 21, 2014) ("[A]n individual is personally liable for all torts the individual committed . . . . [including] torts committed by those acting in their official capacities as officers or agents of a corporation. It is immaterial that the corporation may also be liable." (quoting 3A William Meade Fletcher, Cyclopedia of the Law of Corporations § 1135)). This is true of LLC members and managers as well, *see Duffield Assocs.*, 2010 WL 2802409, at *4 (rejecting individual defendants' argument that they could not personally be held liable for fraud for actions committed on behalf of an LLC of which they were members), notwithstanding the existence of 6 Del. C. § 18-303(a). *Sewell v. Coviello*, CPU5-15-001302, 2016 WL 3152567, at *2 (Del. Ct. C.P. Kent Cty. Mar. 8, 2016) (rejecting the argument that 6 Del. C. § 18-303(a) bars a fraud claim against an LLC member individually).

On the other hand, corporate officers may not be held liable "merely for acts or omissions of the Corporation"; for this reason, "a complaint must, at a minimum, describe affirmative actions taken by that individual directing, ordering, ratifying, approving or consenting to the tort." *Gassis*, 2014 WL 3565418, at *5. Therefore, the Court must analyze the actions Plaintiff alleges the

Individual Defendants took to ascertain whether the TAC states any claims against them individually.

B. Copyright Infringement

To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original" by the defendant. *Kepner-Tregnoe Inc. v. Executive Development, Inc.*, 79 F. Supp. 2d 474, 484 (D.N.J. 1999) (citing *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). An individual within a business entity may be held liable under a "direct" theory of infringement if Plaintiff makes "a showing of volitional conduct—'specifically, the act constituting infringement'—by the [individual] himself." *Star Pac. Corp. v. Star Atl. Corp.*, 574 F. App'x 225, 230 (3d Cir. 2014) (quoting *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004)). Alternatively, an individual may be held liable under a "contributory infringement" theory if the individual, "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing activity[.]" *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984).

"[A]n individual's status as a principal in an infringing venture" may be "strong evidence" of knowing participation. *See Star Pac. Corp.*, 574 F. App'x at 230-31; *see Columbia Pictures*, 749 F.2d at 160 (finding that an individual was a principal and likely a knowing participant in the infringing activity based on evidence that he "conducted negotiations and wrote letters" regarding the infringing activity on behalf of the direct infringer). However, "purely conclusory allegations" without factual assertions as to the individual's involvement are insufficient to survive a motion to dismiss. *Bradshaw v. Am. Inst. for History Educ.*, No. 12-1367 (RBK/KMW), 2013 WL 1007219, at *5-6 (D.N.J. Mar. 13, 2013) (citing *Iqbal*, 556 U.S. at 680). Thus, a complaint alleging

9

an individual's contributory infringement must "plead sufficient facts as to [the individual's] alleged role in the copyright infringement" to survive a motion to dismiss. *Live Face on Web, LLC v. Megapreventionrx, LLC*, No. 15-7143 (JHR/AMD), 2016 WL 3561770, at *4 (D.N.J. June 29, 2016); *see Bradshaw*, 2013 WL 1007219, at *6 ("Plaintiff has alleged no *fact* describing exactly what Defendant Brady did to 'cause or materially contribute' to the alleged infringement of Plaintiff's copyright." (quoting *Columbia Pictures*, 749 F.2d at 160)). Nor is it sufficient to plead an individual's role solely with reference to "Defendants'" collective actions. *See Live Face on Web, LLC*, 2016 LW 3561770, at *4 (claim for contributory infringement against an individual failed under *Twombly/Iqbal* pleading standard because the complaint made "only one particularized allegation as to" the individual defendant and refers collectively to individual and business entity as "Defendants" throughout the rest of the complaint).

The Court previously held Plaintiff stated a claim for copyright infringement against NAPLIA and Sutherland. [ECF No. 53 at 6.] Additionally, the TAC states a claim for contributory copyright infringement against Sutherland and Tuncel. Taking the allegations in the TAC as true, Sutherland and Tuncel would have become familiar with Plaintiff's CPAGold™ product because they helped market it for over a decade, [TAC ¶¶ 17-20], and would be familiar with NAPLIA's allegedly infringing ProSecure product, because of their alleged roles in marketing ProSecure to Plaintiff's CPAGold™ customers. [TAC ¶¶ 28-29, 51.] At the pleading stage, the Court finds this gives rise to an inference that Sutherland and Tuncel knew of the allegedly infringing activity. Furthermore, the TAC alleges Sutherland and Tuncel personally solicited proprietary information from Plaintiff and provided it to Plaza as part of the effort to convince Plaza to underwrite ProSecure. [TAC ¶¶ 37-38.] The Court finds this alleged action constitutes a "material[] contribut[ion]" to the launch of ProSecure. *See Columbia Pictures*, 749 F.2d at 160. Indeed, had

NAPLIA been unable to convince Plaza to underwrite the program, the alleged infringement may never have occurred.

On the other hand, nowhere in the TAC does Plaintiff allege facts describing Vono's individual role in the infringing activity, separate from NAPLIA or the other Individual Defendants.5 On this basis, the Court cannot conclude the TAC alleges Vono himself induced, caused, or materially contributed to the infringing activity. *See Columbia Pictures*, 749 F.2d at 160; *Bradshaw*, 2013 WL 1007219, at *6.

Therefore, the copyright claim must be dismissed as to Vono,6 but not as to Sutherland or Tuncel.

C. NJTSA

The NJTSA defines "misappropriation" as:

(1) Acquisition of a trade secret of another by a person who knows

---

5 The TAC's allegation that "[t]he Individual Defendants personally participated in the infringing activities and used NAPLIA to carry out this deliberate infringement" is conclusory, and insufficient on its own. *See Bradshaw*, 2013 WL 1007219, at *6 (finding the following allegation to be conclusory: "Mr. Brady knowingly and willfully infringed upon Plaintiff's copyrights. In addition, Mr. Brady was a moving, active conscious force behind the company's infringement.").

6 Plaintiff also argues that Vono can be held jointly and severally liable with the other Defendants because he is a partner in the NAPLIA Partnership. [*See* Opp. Br. at 12.] The Court disagrees. "[P]artners are liable jointly and severally for all debts, obligations, and other liabilities *of the partnership*[.]" Revised Unif. P'ship Act § 306(a) (emphasis added). Here, there is no allegation whatsoever that the NAPLIA *Partnership* is liable for any of the conduct alleged—indeed, it is not a Defendant in this case—or that any of the Individual Defendants committed tortious conduct in their capacities as partners within the NAPLIA Partnership. Rather, all of the allegations in this case stem from a time period during which, it appears from the TAC, the NAPLIA LLC was the entity acting as Plaintiff's insurance producer, and the Individual Defendants were acting on behalf of the LLC. Thus, in no sense do Plaintiff's allegations, if true, create "debts, obligations, [or] other liabilities of the partnership." *See id.* As discussed above, with exceptions not applicable here, "no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company." 6 Del. C. § 18-303(a).

> or has reason to know that the trade secret was acquired by improper means; or
>
> (2) Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:
>
> > (a) used improper means to acquire knowledge of the trade secret; or
> >
> > (b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or
> >
> > (c) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

N.J. Stat. Ann. § 56:15-2. Under the NJTSA, "improper means" includes "breach or inducement of a breach of an express or implied duty to maintain the secrecy of, or to limit the use or disclosure of, a trade secret." *Id.* The NJTSA defines a "trade secret" as:

> Information, held by one or more people, . . . that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.*

The Court previously held that, at the pleading stage, Plaintiff adequately alleged that "categories of information that it holds as trade secrets with respect to its products, its customers, and its relationships[,]" were disclosed. [ECF No. 52 at 7-8.] The Court also previously held that, as alleged, NAPLIA and Sutherland had "at least an implied duty to maintain the secrecy and confidentiality of Plaintiff's trade secrets" based on the 2003 confidentiality agreement as well as the "history and relationship" between Plaintiff, NAPLIA, and Sutherland. [ECF No. 52 at 7.] For purposes of the present motion, the Court finds that these determinations apply equally to the

claims against all of the Individual Defendants. Therefore, the only question at this stage is whether each of the Individual Defendants personally are alleged to have breached or induced the breach of the duty to maintain the secrecy of Plaintiff's information. *See* N.J. Stat. Ann. § 56:15-2.

The TAC alleges Sutherland and Tuncel acquired "details of [the] CPAGold™ confidential panel counsel list" and disclosed them to Plaza as part of the effort to convince Plaza to underwrite the ProSecure program. [TAC ¶¶ 37-38.] This is sufficient to withstand a motion to dismiss. On the other hand, there are no allegations that Vono personally did anything with respect to Plaintiff's proprietary information, including acquiring it or disclosing it to anyone.

Therefore, this claim must be dismissed as to Vono, but not as to Sutherland or Tuncel.

### D. Tortious Interference

The law protects a person's interest in a contract already made and in the reasonable expectations of economic advantage. *Harris v. Perl*, 41 N.J. 455, 462 (1964). To prove a claim for tortious interference with contractual relations and prospective economic relations, a plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of the defendant's malicious interference, and that it suffered losses thereby. *Baldasarre v. Butler*, 132 N.J. 278, 293 (1993). The relevant inquiry is whether the conduct crosses the line from competition to tortious injury. *See Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 199 (App. Div. 1995).

The Court previously held that Plaintiff alleged "numerous acts of improper solicitation taken by [NAPLIA and Sutherland] with respect to Plaintiff's customers." [ECF No. 52 at 9.] Indeed, Sutherland allegedly sent an e-mail to another one of Plaintiff's producers asking to discuss CPAGold™ after NAPLIA had ceased to market this program, and Tuncel allegedly admitted to

Plaintiff, after this lawsuit was filed, that he had been "'enticing' many clients to NAPLIA over the last couple months." [TAC ¶ 51.] Read in the light most favorable to Plaintiff, the TAC alleges Sutherland and Tuncel have personally participated in the improper solicitation of Plaintiff's customers. Once again, however, there are no allegations specific to Vono, or any indications of Vono's role in the alleged tortious interference.

Therefore, this claim must be dismissed as to Vono, but not as to Sutherland or Tuncel.

## V. RULE 11 SANCTIONS

The Court denies Plaintiff's motion for sanctions pursuant to Rule 11. [ECF No. 86.] The decision to grant a motion for sanctions is within the discretion of the trial judge and is awarded under Rule 11 "only in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous." *Goldenberg v. Indel, Inc.*, No. 09–5202, 2011 WL 1134454, at *2 (D.N.J. Mar. 25, 2011) (citing *Watson v. City of Salem*, 934 F. Supp. 643, 662 (D.N.J. 1995); *accord Thomas & Betts Corp. v. Richards Mfg. Co.*, 342 F. App'x 754, 762 (3d Cir. 2009). The standard used in the Third Circuit to determine when sanctions are appropriate is "reasonableness under the circumstances." *Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x 174, 184 (3d Cir. 2008) (internal citations omitted). Reasonableness is "an objective knowledge or belief at the time of filing a challenged paper that the claim was well grounded in law and fact." *Ford Motor Co. v. Summit Products, Inc.*, 930 F.2d 277, 289 (3d Cir. 1991).

The Court does not find the Individual Defendants' motion to be unreasonable under the circumstances. Indeed, the Court has held in this Opinion that several of the Individual Defendants' arguments Plaintiff identifies as frivolous [see ECF No. 86 at 2-8] are in fact meritorious. The balance of the Individual Defendants' arguments are not so lacking in merit as to warrant sanctions.

## VI. CONCLUSION

For the reasons described herein, Defendants' motion to dismiss is **GRANTED** as to Vono but **DENIED** as to Sutherland and Tuncel. However, the Court grants Plaintiff 30 days from the date of this Opinion to file a fourth amended complaint to address the pleading deficiencies described herein.

An appropriate order accompanies this Opinion.

_____
CLAIRE C. CECCHI, U.S.D.J.

Date: April 17, 2017