UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JORGENSEN & COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>GARY SUTHERLAND, NORTH AMERICAN PROFESSIONAL LIABILITY INSURANCE AGENCY, LLC, PLAZA INSURANCE COMPANY, ROCKHILL INSURANCE COMPANY, STEPHEN VONO, AND DOGAN TUNCEL,<br><br>Defendants. | Case No.: 2:15-CV-07373-CCC-MF<br><br>**OPINION AND ORDER OF THE SPECIAL MASTER** |

This matter comes before the Special Master on the Motion filed by plaintiff Jorgensen & Company ("Plaintiff") seeking to substitute McGowan & Company, Inc. ("McGowan") as Defendant in this action in place of North America Professional Liability Insurance Agency, LLC, ("NAPLIA"). After considering the submissions of Plaintiff and McGowan, and conducting a hearing, based upon the following, it is the opinion of the Special Master that Plaintiff's Motion is denied.

## FACTS

McGowan and NAPLIA entered into an Asset Purchase Agreement on April 1, 2017. Plaintiff argues that the Asset Purchase Agreement constitutes a de facto merger and that McGowan should therefore be substituted as Defendant in this action in place of NAPLIA pursuant to Federal Rule of Civil Procedure 25(c). McGowan maintains that it explicitly disavowed any liabilities in the Asset Purchase Agreement and that it was not the intent of the contracting parties to effectuate a merger or consolidation rather than a sale of assets.

## OPINION

Federal Rule of Civil Procedure 25(c) provides: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." "A 'transfer of interest' in a corporate context occurs when one corporation becomes the successor by merger or other acquisition of the interest the original corporate party had in the lawsuit." Luxliner P.L. Export Co. v. RDI/Luxliner, Inc., 13 F.3d 69, 71 (3d Cir.1993) (citations omitted). "Since joinder or substitution under Rule 25(c) is a procedural device that does not typically alter the substantive rights of a party, a Rule 25(c) decision is generally left to the court's discretion." Mars, Inc. v. JCM Am. Corp., No. 05-3165 (RBK), 2007 WL 776786, at *1 (D.N.J. Mar. 9, 2007) (citing Luxliner, 13 F.3d at 71-72).

Generally, under New Jersey law, when a company sells its assets the purchasing company is not liable for the seller's debts and liabilities. McKee v. Harris–Seybold Co., 109 N.J. Super. 555, 561, 264 A.2d 98, 101 (1970); Luxliner, 13 F.3d at 73; Colman v. Fisher–Price, Inc., 954 F.Supp. 835, 838 (D.N.J. 1996). However, a company may succeed to the liabilities of another company in certain limited instances. The doctrine of successor liability permits four such instances: (i) the purchaser expressly or implicitly agrees to assume the other company's debts and obligations; (ii) the purchase is a de facto consolidation or merger; (iii) the purchaser is a mere continuation of the seller; or (iv) the transfer of assets is for the fraudulent purpose of escaping liability. Philadelphia Elec. Co. v. Hercules, Inc., 762 F.2d 303, 308–09 (3d Cir.1985); Colman, 954 F.Supp. at 838; Glynwed, Inc. v. Plastimatic, Inc., 869 F.Supp. 265, 271 (D.N.J. 1994). In this matter, Plaintiff argues that the second exception applies because the Asset

2

Purchase Agreement between McGowan and NAPLIA constituted a de facto consolidation or merger.

In determining whether a particular transaction amounts to a de facto consolidation or merger the court must consider four factors: (1) continuity of management, personnel, physical location, assets, and general business operations; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor; and (4) continuity of ownership/shareholders. Luxliner, 13 F.3d at 73 ("[T]he fact finder must consider whether stock was part of the purchase price for the assets; whether there was a continuity of business, control or management between the two corporations; and whether the alleged successor corporation assumed the debts of the predecessor corporation."); Menacho v. Adamson United Co., 420 F.Supp. 128, 133 (D.N.J. 1976). All of the factors need not be present to demonstrate a de facto merger or mere continuation, and "[t]he crucial inquiry is whether there was an 'intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets.'" Luxliner, 13 F.3d at 73 (quoting McKee, 109 N.J. Super. at 567, 264 A.2d 98).

The first factor of the de facto merger analysis is whether there was continuity of management, personnel, physical location, assets, and general business operations. The facts reveal that following the Asset Purchase Agreement: (i) the three equity owners of NAPLIA are now employed by McGowan; (ii) an unspecified number of former NAPLIA employees are now employed by McGowan; and (iii) former NAPLIA employees now working for McGowan continue to work in Farmington, Connecticut, albeit in a different office space than that utilized by NAPLIA. Plaintiff further argues that following the Asset Purchase Agreement, the general

business operations of NAPLIA remain the same under McGowan, according to McGowan's website.

McGowan argues that after the Asset Purchase Agreement McGowan: (i) trained any new employees in the use of the McGowan computer system and policies/producers; (ii) forwarded a letter to NAPLIA's customers informing them that NAPLIA and McGowan entered into an asset purchase agreement whereunder McGowan purchased the assets, but not liabilities, of NAPLIA and the transaction was a not a merger of NAPLIA and McGowan; (iii) sent out a press release outlining that NAPLIA and McGowan entered into an asset purchase agreement whereunder McGowan purchased the assets, but not liabilities, of NAPLIA and the transaction was a not a merger of NAPLIA and McGowan; (iv) placed a notice on the NAPLIA website informing visitors that NAPLIA and McGowan entered into an asset purchase agreement whereunder McGowan purchased the assets, but not liabilities, of NAPLIA and the transaction was a not a merger of NAPLIA and McGowan; (v) notified NAPLIA's insurance companies of the asset purchase; (vi) changed the e-email addresses of all the employees hired from naplia.com to mcgowanpro.com; (vii) took steps to change the naplia.com website to mcgowanprofessional.com; and (viii) canceled all of NAPLIA's contracts with insurance companies and replaced them with contracts between McGowan and those companies. Plaintiff responds by arguing that many of these changes were not made until after Plaintiff filed his Motion to Substitute on July 5, 2017, three months after the Asset Purchase Agreement.

After considering the facts presented in the moving papers and at oral argument, there does not appear to be such a continuation of management, personnel, physical location, assets, and general business operations that would weigh in favor of finding a de facto merger. In the instant case, there was obviously some degree of continuation of business operations as

NAPLIA's assets were presumably purchased for that reason. When one company purchases all the assets of another, it is to be expected that the purchasing corporation will continue the operations of the former, but this does not by itself render the purchaser liable for the obligations of the former. Luxliner, 13 F.3d at 75 (quoting McKee, 109 N.J. Super. at 570, 264 A.2d 98). The mere fact that the purchaser has continued the seller's business is therefore insufficient.

NAPLIA has demonstrated that it took a number of steps following the merger, including: (i) training new employees in the use of the McGowan computer system and policies/producers; (ii) forwarding a letter to NAPLIA's customers informing them that NAPLIA and McGowan entered into an asset purchase agreement whereunder McGowan purchased the assets, but not liabilities, of NAPLIA and the transaction was a not a merger of NAPLIA and McGowan; (iii) sending out a press release outlining that NAPLIA and McGowan entered into an asset purchase agreement whereunder McGowan purchased the assets, but not liabilities, of NAPLIA and the transaction was a not a merger of NAPLIA and McGowan; (iv) placing a notice on the NAPLIA website informing visitors that NAPLIA and McGowan entered into an asset purchase agreement whereunder McGowan purchased the assets, but not liabilities, of NAPLIA and the transaction was a not a merger of NAPLIA and McGowan; (v) notifying NAPLIA's insurance companies of the asset purchase; (vi) chaning the e-mail addresses of all the employees hired from naplia.com to mcgowanpro.com; (vii) taking steps to change the naplia.com website to mcgowanprofessional.com; and (viii) canceling all of NAPLIA's contracts with insurance companies and replaced them with contracts between McGowan and those companies. It would be unreasonable to expect all of these changes to occur as soon as the Asset Purchase Agreement was signed on April 1, 2017. Therefore, Plaintiff's argument that these

changes should be disregarded as they were made several weeks or months later is unavailing. Accordingly, this prong of the analysis weighs against finding a de facto merger.

The second factor in a de facto merger analysis is whether there was a cessation of ordinary business and dissolution of the acquired corporation as soon as possible. Here, Plaintiff acknowledges that there has been no dissolution of NAPLIA. However, Plaintiff argues that NAPLIA is an asset-less shell that no longer conducts business. Counsel for McGowan maintains that NAPLIA still exists and points to the fact that it continues to defend itself in litigation. After careful consideration this factor must weigh against finding a de facto merger as there has been no dissolution of NAPLIA and NAPLIA continues to engage in litigation in both New Jersey and Massachusetts.

The third factor, assumption of liabilities, also weighs against finding successor liability. Plaintiff argues that because McGowan is now employing and paying the salaries of former NAPLIA employees it has thereby assumed some of NAPLIA's liabilities. Plaintiff also argues that McGowan is funding NAPLIA's litigation expenses. The Special Master is not persuaded by these arguments. The fact that McGowan has employed former NAPLIA employees and now pays their salaries is not evidence that McGowan has assumed NAPLIA's liabilities. Moreover, Counsel for McGowan has represented that NAPLIA signed promissory notes to obtain funds from McGowan in order to pay its litigation expenses. McGowan is therefore not assuming NAPLIA's litigation costs but rather providing a loan to NAPLIA. Most significantly, the Asset Purchase Agreement specifically disavows McGowan's assumption of any of NAPLIA's liabilities. Accordingly, this prong of the analysis also weighs against a de facto merger.

With respect to the fourth factor, to prove a continuity of ownership Plaintiff "must prove that 'the purchasing corporation represents merely a 'new hat' for the seller.'" IDT Telecom, Inc.

v. CVT Prepaid Sols., Inc., No. CIV.A. 07-1076 (GEB), 2009 WL 5205968, at *12 (D.N.J. Dec. 28, 2009) (quoting Luxliner, 13 F.3d at 75). Here, in consideration of the Asset Purchase Agreement, McGowan paid the IRS $225,000 on behalf of the equity owners of NAPLIA, defendants Tuncel, Vono, and Sutherland. While subsequently employed by McGowan, defendants Tuncel, Vono, and Sutherland did not receive an ownership interest in McGowan. Plaintiff cites Atlas Tool Co. v. C. I. R., 614 F.2d 860, 871 (3d Cir. 1980) for the proposition that continuity of ownership need not be demonstrated by a stock transfer but may be established from defendants Tuncel, Vono, and Sutherland's employment with McGowan. However, in Atlas, the same person owned all controlling stock of both the transferor, the company allegedly subsumed by de facto merger, and the purchasing company. The Special Master is not convinced there was so "clearly a continuation of stockholder interest" here. Id. at 871. As the former equity owners of NAPLIA have no ownership interest in McGowan, this factor also weighs against a de facto merger.

After weighing the four factors, the scale does not tip in favor of a de facto merger. The Special Master is simply not convinced that "there was an intent on the part of the contracting parties to effectuate a merger or consolidation rather than a sale of assets." Luxliner, 13 F.3d at 73. Accordingly, Plaintiff's Motion seeking to substitute McGowan as Defendant in this action in place of NAPLIA is denied.

                                                          **DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)**
                                                          Special Master